UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NICHOLAS ZEYADEH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 21 C 2129 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| THOMAS J. DART, in his individual capacity, | ) | |
| JOHN DOE 1, JOHN DOE 2, and | ) | |
| COUNTY OF COOK, as indemnitor, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

In December 2020, Plaintiff Nicholas Zeyadeh announced his candidacy for Cook County Sheriff for the 2022 election cycle, running against Defendant Thomas J. Dart, the current Sheriff of Cook County. On April 16, 2021, Zeyadeh received notice of a pending transfer from his post in the Cook County Department of Corrections ("CCDOC") external operations unit, followed shortly thereafter by notice of a pre-termination hearing. Zeyadeh subsequently filed this suit against Dart, Defendants John Doe 1 and John Doe 2 (the "John Doe Defendants"), and the County of Cook (the "County"), alleging Dart and the John Doe Defendants engaged in political retaliation in violation of his First Amendment rights under 42 U.S.C. § 1983, and that the County must indemnify Dart and the John Doe Defendants for their actions. Dart and the County now move to dismiss Zeyadeh's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Zeyadeh has sufficiently alleged Dart and the John Doe Defendants' personal involvement in the alleged constitutional deprivation for pleading purposes, the Court finds that he can proceed on his claims against them. And because those claims survive, his indemnification claim against the County must proceed as well.

## BACKGROUND[1]

Zeyadeh is a CCDOC correctional lieutenant. He began his employment as a correctional officer with CCDOC on September 20, 1999. On April 20, 2003, Zeyadeh received a promotion to be a correctional sergeant, followed by a promotion to the role of correctional lieutenant on July 1, 2012.

In December 2020, Zeyadeh publicly announced his run for Cook County Sheriff for the 2022 election cycle. Zeyadeh regularly discussed his plans to run for Sheriff with co-workers and also met with local community leaders in the Latino and Arabic communities around Chicago. Zeyadeh garnered support for his campaign within the Cook County Sheriff's Department, including from fellow CCDOC correctional officers, supervisors, and staff, as well as from outside community leaders and election specialists. In January 2021, Zeyadeh also began posting regularly to his Facebook page, making his intentions to run for Sheriff public. Since his verbal and online declarations in December 2020 and January 2021, fellow officers and staff at the CCDOC compound asked Zeyadeh daily about his candidacy for Sheriff.

On April 16, 2021, Zeyadeh received a transfer notice stating that he was being transferred from his post in CCDOC's external operations unit to the receiving unit, signed by the Executive Director for CCDOC Operations, Michael Miller. Shortly thereafter, Zeyadeh phoned Miller to ask for the reasons behind his transfer, to which Miller replied that it was above his pay grade, with the order coming from "upstairs." Doc. 1 ¶ 29. That same day, Special Assistant to the Cook County Sheriff's Office Mary McQuillan emailed Zeyadeh, explaining that

---

[1] The Court takes the facts in the background section from Zeyadeh's complaint and presumes them to be true for the purpose of resolving Dart and the County's motion to dismiss. *See Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1019–20 (7th Cir. 2013). Although the Court normally cannot consider extrinsic evidence without converting a motion to dismiss into one for summary judgment, *Jackson v. Curry*, 888 F.3d 259, 263 (7th Cir. 2018), the Court "may also take judicial notice of matters of public record." *Orgone Cap. III, LLC v. Daubenspeck*, 912 F.3d 1039, 1043–44 (7th Cir. 2019).

the transfer stemmed from an investigation but that she did not have any additional information on the matter. However, Miriam Rentas, the Director of the Sheriff's Office of Professional Review, denied having anything to do with the transfer and noted that she did not know who did.

On April 22, 2021, the Sheriff's Office Employee Discipline/Administrative Hearing Unit notified Zeyadeh and his union stewards, Kieran Mundt and Charles Luna, of a *Loudermill* hearing.[2] The *Loudermill* notice advised Zeyadeh that he was being recommended for separation from employment with the Sheriff's Office for violating certain CCDOC and Sheriff's Merit Board rules and regulations. These alleged violations stem from a complaint a female correctional officer filed against Zeyadeh with respect to a September 14, 2020 incident when Zeyadeh asked her to move from one security post at the University of Chicago Hospital to another at Stroger Hospital.

Zeyadeh, however, maintains that the alleged violations forming the basis of his transfer and the *Loudermill* hearing served only as pretext for retaliation for his announced challenge to Dart in the 2022 Sheriff's race. Such actions follow a pattern for Dart, who stated in a February 3, 2014 interview that, if one of his employees failed to abide by his rules, he could make the employee's life "tricky," including by transferring them to unfavorable locations or firing them. *Id.* ¶ 45b.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-

---

[2] A *Loudermill* hearing is a pre-termination procedure set forth in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). In *Loudermill*, the Court held that a public employee can be dismissed only after receiving a pre-termination hearing, followed by a more comprehensive post-termination hearing. *Id*. at 545–46.

pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### I. Section 1983 Claim against Dart

Dart first argues that Zeyadeh cannot pursue a § 1983 claim against him because Zeyadeh has not alleged facts sufficient to show that Dart had any personal involvement in the alleged constitutional violation. Section 1983 allows for claims based on personal liability and predicated upon fault, meaning that "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005) (citation omitted) (internal quotation marks omitted); *see also Childress v. Walker*, 787 F.3d 433, 439–40 (7th Cir. 2015) ("[A]n individual must be personally responsible for a constitutional deprivation in order to be liable, [but] personal responsibility is not limited to those who participate in the offending act."). For a supervisor like Dart, this means that he must have known "about the conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye." *Arnett v. Webster*, 658 F.3d 742, 757 (7th Cir. 2011).

Here, Zeyadeh alleges that Dart knew of Zeyadeh's intentions to run for Sheriff and personally orchestrated Zeyadeh's transfer, as well as the *Loudermill* hearing, in retaliation for that candidacy. Specifically, Zeyadeh asserts that, since his verbal and online declarations in

4

December 2020 and January 2021, his candidacy created awareness such that officers and staff asked about it on a daily basis and the candidacy became widespread knowledge throughout the Sheriff's Office. In other words, he alleges that Dart and the highest members of his administration could not escape knowledge of his candidacy. However, Dart contends that certain judicially noticeable facts highlight the conclusory nature of Zeyadeh's allegations. Specifically, Dart maintains that the Court can take judicial notice of the fact that: (1) the Cook County Sheriff's Office employs over 5,000 individuals; (2) the Cook County Jail is the one of the largest single-site jails in the country and includes multiple buildings spanning eight city blocks; (3) pursuant to the Sheriff's Employment Action Manual, an executive office chief, department head, executive director of the Office of Professional Review, or executive director of Human Resources, but not Dart, can make employee transfer recommendations due to an investigation; and (4) Miller does not report directly to Dart. To the extent these facts are properly before the Court at the motion to dismiss stage, they only serve to create factual disputes as to whether Dart knew of Zeyadeh's candidacy or had any part in Zeyadeh's transfer. *See Iqbal*, 556 U.S. at 696 (courts cannot make factual or credibility determinations at the motion to dismiss stage because "a court must take the allegations as true, no matter how skeptical the court may be"). They do not, as Dart argues, demonstrate that Zeyadeh's allegations are unreasonable or implausible, as would be required to warrant dismissal at the pleadings stage. And with his allegations that his transfer order came from "upstairs," coupled with Dart's statements regarding transferring or firing Sheriff's Office employees who did not fall in line, at this stage of the pleadings, the complaint allows for the reasonable inference that Dart either had knowledge of the transfer and approved it or turned a blind eye towards it. *See Liska v. Dart*, 60 F. Supp. 3d 889, 902 (N.D. Ill. 2014) ("Liska alleges that Sheriff Dart 'knew or should have

known of the malfunctions' of the monitoring system in his home . . . [these] allegations clearly state that Sheriff Dart knew of the system malfunctions."). Although discovery may show otherwise, this suffices here because Zeyadeh need "merely to state a claim, not prove it." *Wooden v. Freeman*, No. 98 C 163, 1999 WL 498593, at *2 (N.D. Ill. July 6, 1999); *see also Liska*, 60 F. Supp. 3d at 902 ("The Court concludes that Liska has sufficiently pleaded that Sherriff Dart was personally responsible for the alleged deprivation to maintain Section 1983 liability against him in his individual capacity).

## II. Section 1983 Claim against the John Doe Defendants

Next, in a parallel argument, Dart and the County contend that Zeyadeh failed to allege sufficient facts to show that the John Doe Defendants caused or participated in the alleged deprivation of Zeyadeh's constitutional rights.[3] As discussed above, to state a § 1983 claim against the John Doe Defendants in their individual capacities, Zeyadeh must allege their personal involvement. *Pepper*, 430 F.3d at 810. Treating these John Doe Defendants as supervisors, this requires allegations that they "kn[ew] about the [unconstitutional] conduct and facilitate[d] it, approve[d] it, condone[d] it, or turn[ed] a blind eye for fear of what they might see." *Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1988).

Zeyadeh argues that he has effectively pleaded the John Doe Defendants' personal involvement because his claims are as simple as "someone(s) had to help Dart effectuate the paperwork." Doc. 19 at 5. In the complaint, Zeyadeh alleges that the John Doe Defendants

---

[3] Although Zeyadeh has not yet identified the John Doe Defendants and they have not entered appearances, the Court nonetheless may consider the arguments Dart and the County make on their behalf, particularly as Zeyadeh identifies them as Sheriff's Office employees. *Cf. Malak v. Associated Physicians, Inc.*, 784 F.2d 277, 280 (7th Cir. 2011) (court may *sua sponte* enter judgment in favor of additional non-moving defendants if motion by one defendant is equally effective in barring claim against other defendants and plaintiff had adequate opportunity to respond to the motion); *Roberts v. Cendent Mortg. Corp.*, No. 1:11- CV-01438-JMS, 2013 WL 2467996, at *5 (S.D. Ind. June 7, 2013) (although the defendants had not entered appearances and it was not clear if they had been served, court could impute arguments made by one defendant to all defendants and dismiss claims against all of them).

knew of Zeyadeh's candidacy and participated in his transfer because "it is not possible for Sheriff Dart to [have] conduct[ed] these actions without the involvement of other individuals high-up in the Sheriff's Office, and accordingly, . . . one or more John Does were also personally involved in the orchestration of this retaliation." Doc. 1 ¶ 54. The complaint further suggests that other individuals in the Sheriff's Office participated in the transfer and *Loudermill* hearing decisions, evidenced by Miller's statement that the transfer order came from his superiors. And because Zeyadeh's candidacy had garnered support and attention from CCDOC officers and staff, as with Dart, the Court can again draw the plausible inference that the John Doe Defendants should have known of Zeyadeh's run for Sheriff. As previously discussed, although discovery may prove otherwise, Zeyadeh has sufficiently alleged enough facts at the pleading stage for the John Doe Defendants to remain in the case for now. *See Sanchez v. Vill. of Wheeling*, 447 F. Supp. 3d 693, 705 (N.D. Ill. 2020) ("[I]t can be reasonably inferred at the pleading stage that the officers conspired to deprive [plaintiff] of his constitutional rights."). Once Zeyadeh identifies the John Doe Defendants, however, those individuals may revisit whether Zeyadeh has sufficiently suggested their personal involvement in the challenged actions.

**III.     Indemnification**

Finally, the County seeks to dismiss Zeyadeh's indemnification claim. The County argues that, because Zeyadeh fails to allege facts sufficient to state a § 1983 claim against Dart and the John Doe Defendants, he also fails to state a claim against the County for indemnification. But because the underlying claims against Dart and the John Doe Defendants survive, the indemnification claim remains viable at this time as well.

## CONCLUSION

For the foregoing reasons, the Court denies Dart and the County's motion to dismiss [16].

Dated: January 10, 2022

_____
SARA L. ELLIS
United States District Judge